# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**RODNEY M.,**[1]

        Plaintiff,

    v.

**COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.

Case No. 6:17-cv-728-SI

**OPINION AND ORDER**

John E. Haapala, Jr., 401 E. 10th Avenue, Suite 240, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Sarah L. Martin, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Rodney M. ("Plaintiff") seeks judicial review of the final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying his application for Disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's family members.

Insurance Benefits ("DIB"). Because the Commissioner's decision was based on the proper legal standards and the findings were supported by substantial evidence, the decision is AFFIRMED.

## STANDARD OF REVIEW

The District Court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Molina v. Astrue*, 673 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* at 1110-11 (quotation omitted). The Court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.* at 1110. The Court may not substitute its judgment for that of the Commissioner. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

### A.    Plaintiff's Application

Plaintiff filed his application for DIB on April 11, 2014, alleging disability as of February 28, 2013. AR 66. The claim was denied initially and upon reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 3, 2016. AR 34-65. After the hearing, ALJ Elizabeth Watson issued an adverse decision dated January 4, 2017, finding Plaintiff not disabled within the meaning of the Social

Security Act ("the Act"). AR 13-26. The decision became the final decision of the Commissioner

when the Appeals Council denied review. AR 1-3. Plaintiff now seeks review in this Court.

Born in August 1961, Plaintiff was 51 years old on the alleged disability onset date and

56 years old at the time of the administrative hearing. AR 80. He attended school through the

ninth grade, and apparently earned his GED while he served in the military. AR 35. Plaintiff

alleges disability due to: herniated discs, degenerative spine, bipolar disorder, attention deficit

disorder, vision impairment, drug and alcohol addiction, and heart problems. AR 70.

**B.     The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 432(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20

C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §
      404.1520(a)(4)(i). This activity is work involving significant mental or
      physical duties done or intended to be done for pay or profit. 20 C.F.R. §
      404.1510. If the claimant is performing such work, she is not disabled
      within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the
      claimant is not performing substantial gainful activity, the analysis
      proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
      regulations? 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or
      combination of impairments is "severe" if it significantly limits the
      claimant's physical or mental ability to do basic work activities. 20 C.F.R.
      § 404.1521(a). Unless expected to result in death, this impairment must
      have lasted or be expected to last for a continuous period of at least 12

months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.   Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.   Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.   Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.920(a)(4)(v), 404.1560(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing

"work which exists in the national economy"). If the Commissioner fails to meet this burden, the

claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that

the claimant is able to perform other work existing in significant numbers in the national

economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d

at 1099.

**C.      The ALJ's Decision**

The ALJ performed the sequential analysis. At step one, the ALJ found Plaintiff had not

engaged in substantial gainful activity since the alleged onset date, February 28, 2013. AR 14. At

step two, the ALJ concluded that Plaintiff had the following severe impairments: lumbar spine

degenerative disc disease; bipolar disorder; and attention deficit hyperactivity disorder

("ADHD"). *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or

combination of impairments that met or equaled a listed impairment. AR 15.

The ALJ next assessed Plaintiff's RFC and found that he could lift and/or carry 50

pounds occasionally and 25 pounds frequently; sit, stand, or walk each about six hours in an

eight-hour day, with normal breaks; was limited to no more than occasional climbing of ladders,

ropes, or scaffolds; was limited to no more than frequent kneeling, crouching, and crawling, and

not more than occasional stooping; was limited to understanding and carrying out simple

instructions in an environment with few workplace changes; was limited to no contact with the

general public, and no more than occasional contact with coworkers and supervisors. AR 18.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.

AR 24. At step five, the ALJ concluded that considering his age, education, work experience,

and RFC, Plaintiff could perform the following jobs which existed in significant numbers in the

national economy: laborer, stores; and cleaner, II.  AR 25. Accordingly, the ALJ concluded that

Plaintiff was not disabled within the meaning of the Act from February 28, 2013, through the

date of the decision, January 4, 2017. AR 26.

**DISCUSSION**

Plaintiff contends that the ALJ erred in three respects: (1) by failing to find that Plaintiff met or equaled Listing § 1.04; (2) by failing properly to evaluate the medical source opinion evidence in the record; and (3) by failing properly to evaluate Plaintiff's symptom allegation testimony.

**A.      Listing § 1.04**

At step three of the sequential evaluation process, the ALJ must consider whether a claimant's severe impairments, either separately or in combination, meets or equals one of the presumptively disabling impairments listed in the regulations.  20 C.F.R. § 404.1520(a)(4)(iii); *see* 20 C.F.R. Part 404, Subpart P, Appendix I. In order to demonstrate that a claimant's impairment is the medical equivalent of one of the listed impairments, the claimant must present medical findings equal in severity to all of the criteria of a listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis omitted); *see also Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). In order to meet Listing § 1.04 for disorders of the spine, a claimant must provide evidence of a compromised nerve root or spinal cord with: "nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

Although Plaintiff argues the ALJ's conclusion regarding Listing § 1.04 was not based on substantial evidence, he also concedes that, "it is not clear that plaintiff's objective findings establish that he meets Listing 1.04." Pl.'s Br. 10. Rather, argues Plaintiff, the ALJ failed to consider whether plaintiff met *or equaled* the listing. *Id.* However, the "ALJ is not required to

discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). Additionally, "[i]t is unnecessary to require . . . [the ALJ] to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

Plaintiff argues the ALJ "failed to consider multiple MRIs as well as the statements from [treating physician] Dr. [T.M.] Ewald [M.D.] . . . ." Pl.'s Br. 10. However, the ALJ noted in her decision that a November 2014 MRI showed "mild bilateral recess narrowing L2-L3 which may impinge on descending L3 nerve . . . [and] mild left lateral recess narrowing L3-L4 which may impinge on descending left L4 nerve . . . ." AR 20. The ALJ explained that despite those findings, Plaintiff demonstrated fairly benign examination findings following epidural injections in his lumbar spine. *Id.* Also, the ALJ considered the medical opinion statement provided by Dr. Ewald, but accorded it little weight because the ALJ found it was inconsistent with Plaintiff's "mild to normal physical examinations." AR 23. Thus, Plaintiff's assertion that the ALJ did not consider the medical evidence in determining he did not meet Listing § 1.04 is unavailing.

Further, because Plaintiff concedes that his objective findings do not establish that he meets Listing § 1.04, and because Plaintiff did not proffer an argument as to how the medical evidence equals a listing during the administrative hearing or before this Court, Plaintiff has not demonstrated that the ALJ erred in finding he did not equal Listing § 1.04. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ did not err in failing to discuss the combined effects of impairments where claimant did not offer any theory about how two severe impairments combined to equal a listed impairment).

**B. Medical Opinion Evidence**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating

physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ effectively rejects an opinion when he or she ignores it. *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

Social Security Rule ("SSR") 06-03p defines "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p. Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d). Because Mr. Murrow is a nurse practitioner, he is considered an "other" medical source.

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when

rejecting similar testimony by a different witness." *Id.* at 1114. The ALJ may also "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

### 1.    Other Medical Source, Mr. Murrow

Plaintiff asserts that the ALJ erred by failing to consider Mr. Murrow's "other" medical source opinion that, due to a combination of his lumbar spine and mental impairments, Plaintiff is disabled. *See* AR 1168. Plaintiff's argument is misplaced, however, because Mr. Murrow did not render his opinion until January 23, 2017, more than two weeks after the ALJ's decision was published. *Compare* AR 26 *with* AR 1168. Mr. Murrow's medical opinion was subsequently submitted to the Appeals Council where it was entered into the administrative record, although

the Appeals Council ultimately determined that the evidence did not provide a basis for reversing the ALJ's decision. AR 1-6. Thus, Plaintiff's proffered argument is without merit.

Nevertheless, because Mr. Murrow's assessment was properly integrated at the Appeal Council level, this Court must consider it in determining whether the Commissioner's decision is supported by substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012). The Commissioner, however, argues that although Mr. Murrow's assessment is part of the record, it is not relevant because it does not relate to the adjudication period at issue in this case. Specifically, the Commissioner asserts that because Plaintiff's last insured date was December 31, 2016, the January 19, 2017 MRI results referenced in Mr. Murrow's January 23, 2017 statement do not directly relate to the adjudication period. Def.'s Br. 8-9. The Commissioner's position that an MRI generated 20 days after the date last insured is not relevant is unpersuasive in the context of a degenerative condition, not to mention extensive Ninth Circuit precedent. *See, e.g.*, *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1980) ("medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition") (citations omitted); *Sampson v. Chater*, 103 F.3d 918, 922 (9th Cir. 1996); *Barnard v. Comm'r of Soc. Sec. Admin.*, 286 Fed. App'x 989, 993 (9th Cir. 2008); *Simpson v. Colvin*, No. 3:13-cv-00584-SI, 2014 WL 5791566, at *5 (D. Or. Nov. 6, 2014).

Even so, Plaintiff has not demonstrated that Mr. Murrow's opinion provides a basis for concluding that the ALJ's non-disability decision was improper. *See Brewes*, 682 F.3d at 1162 (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993)). Although Mr. Murrow opined that the January 19, 2017 MRI showed neuroforaminal stenosis at several levels of the lumbar spine, with possible impingement on the L4 nerve, his interpretation was no different than the interpretation of Plaintiff's November 2014 MRI, which the ALJ reviewed and considered.

AR 20, 1168. Although Mr. Murrow stated that, "[t]his impingement has led to pain radiating into the left leg and altering his gait . . ." (AR 1168), the ALJ previously found that Plaintiff's physical examinations had been nearly universally benign, including normal gait. *See* AR 20, 269, 272, 613, 653-54, 829-30, 1164. Considering that the ALJ would need only to provide a reason germane to him in order to reject Mr. Murrow's opinion, it is clear that Mr. Murrow's anomalous observation of impaired gait would likely be the rationale. Regardless, because Mr. Murrow's opinion that possible nerve impingement caused impaired gait on the left side, which in turn caused pain on the right side, is inconsistent with the evidentiary record of consistently normal gait on examination, the ALJ's decision remains supported by substantial evidence. *Brewes*, 682 F.3d at 1163; *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled.").

Further, to the extent Mr. Murrow opined that Plaintiff was disabled, his opinion would not be subject to any special significance, as such determinations are reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1). For these reasons, Mr. Murrow's "other" medical source opinion does not warrant remand.

### 2. Acceptable Medical Source, Dr. Ewald

Dr. Ewald completed a medical source statement worksheet in September 2016. AR 1153-1157. The doctor indicated he had treated Plaintiff since 1998 for right-sided sciatica and lumbar spondylosis, noting the following clinical findings: positive straight-leg raise on the right to 45 degree; deep tendon reflex abnormality, 0/5 Waddell's signs, and no lumbar range of motion below L3. AR 1154. Dr. Ewald opined Plaintiff could sit for 30 minutes at a time and

stand for 5-10 minutes, and could sit and stand/walk for about two hours each in an eight-hour workday. *Id.* The doctor opined that Plaintiff would need to take breaks every hour, could only rarely lift up to ten pounds. AR 1155-56 Further, Dr. Ewald indicated Plaintiff would be off-task at least one quarter of a workday, could not tolerate even low-stress work, and would miss more than four days per month. AR 1157. The ALJ accorded the opinion little weight, noting that Dr. Ewald's treatment overlapped the adjudication period for merely one month, and also noting that his opinion was inconsistent with the record as a whole. AR 23.

The Court agrees that the ALJ likely erred to the extent she rejected Dr. Ewald's opinion because his treatment of Plaintiff overlapped the relevant period only by a month. Generally, the longer a physician has treated a claimant, the greater the weight an ALJ should accord that physician's opinion, because the physician is likely to have a closer relationship with the claimant, and therefore a better grasp of the claimant's longitudinal health history and understanding of the claimant's impairments. *See* 20 C.F.R. § 404.1527(c).

Regardless of the treating relationship, however, the ALJ is not required to accept any medical opinion that is brief, conclusory, or unsupported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Here, despite Dr. Ewald's ten-year history of treating Plaintiff, very few treatment notes are included in the record. Those treatment notes that are in the record demonstrate only minimal reports or findings of back pain, consistent with the ALJ's finding. For example, in April 2014, Plaintiff was examined by Dr. Ewald in order to establish that he was medically qualified to obtain a commercial driver's license. AR 269-72. Although Plaintiff asserts that Dr. Ewald performed a "vision exam," the chart notes reflect that the doctor performed a comprehensive physical examination: Plaintiff was found to have "no muscle aches or weakness and no arthralgias/joint pain, back pain, or swelling in the

extremities." AR 269. His neurologic and psychiatric screens were negative. AR 270. Dr. Ewald

also indicated that Plaintiff was free of back pain or spinal injury, and was negative for

musculoskeletal problems. AR 271-72. Such findings are starkly inconsistent with Dr. Ewald's

conclusions just two years later. As the final arbiter of conflicts and ambiguities in the medical

record, the ALJ appropriately identified the conflict and accorded the doctor's opinion little

weight. *See Tommasetti*, 533 F.3d at 1041-42.

Plaintiff argues that Dr. Ewald's opinion was consistent with other evidence of record,

including some instances where Plaintiff reported back pain, even when he was observed to have

normal gait and normal sensory function. Pl.'s Br. 17; AR 653, 829, 1164-65. However, a

claimant may not establish disability based on symptom allegations alone; rather, the ALJ must

"determine the extent to which [the claimant's] alleged functional limitations and restrictions due

to pain or other symptoms can reasonably be accepted as consistent with the medical signs and

laboratory findings and other evidence[.]" 20 C.F.R. § 404.1529(a). In the absence of probative,

objective findings, Plaintiff's subjective complaints provide no basis for the ALJ's rejection of

Dr. Ewald's opinion.

Finally, Plaintiff asserts that Dr. Ewald provided objective clinical findings within his

medical opinion insofar as the doctor noted positive straight-leg test on the right, abnormal deep-

tendon reflexes, 0/5 Waddell's signs, and no range of motion ("ROM") in the lumbar spine

below the L3 level. However, as noted above, none of the treatment notes of record corroborate

*any* of the limitations Dr. Ewald endorsed in his opinion. To the contrary, the record consistently

demonstrated negative straight-leg testing, normal gait, normal to mild limitation in range of

motion, and normal deep-tendon reflexes. *See* AR 20-21, 23, 653-54 (good muscle bulk, normal

gait), 829 (mild ROM limitation in lumbar spine, but negative straight-leg raise, no limp, normal

deep-tendon reflexes), 1164 (normal ROM in lumbar spine, normal gait). As such, the ALJ's rationales for rejecting Dr. Ewald's opinion were specific and legitimate, and well-supported by substantial evidence. The ALJ did not err.

### 3. Acceptable Medical Source, Dr. Roman

Treating psychiatrist Dr. Roman provided a mental health assessment in September 2016. AR 1082-87. Her diagnoses included bipolar disorder, ADHD, PTSD, and opioid use disorder. AR 1082. She also noted Plaintiff's chronic back pain, glaucoma, hypertension, and sciatica, and assessed a GAF score of 42. *Id.* Dr. Roman described the following clinical findings: "[d]istractability; presents as tense; worries a lot[;] complains of back pain." *Id.* She indicated that Plaintiff would be unable to meet competitive standards in the following categories of unskilled jobs: maintaining attentions for two hour segments, maintaining regular attendance, working in coordination with others, making simple work-related decisions, completing a normal work day/week without interruption from psychiatric symptoms, performing at an acceptable pace; getting along with coworkers, and dealing with normal work stress. AR 1084. The doctor stated that the primary impediments to Plaintiff's ability to work were his back pain, anxiety around others, difficulty focusing, and mood swings at times; she opined that he would miss more than four workdays per month. AR 1086. The ALJ accorded Dr. Roman's opinion little weight, noting a limited treatment relationship, and lack of support from the medical record. AR 23.

In contrast to Dr. Ewald's extensive treatment history, Dr. Roman only treated Plaintiff monthly from May 2016 until she rendered her opinion in September 2016. Although the Court recognizes that even a handful of clinical visits is more extensive than none at all, it was within

the ALJ's proper discretion to discount Dr. Roman's medical assessment based on the doctor's limited treatment history of only a few months. 20 C.F.R. § 404.1527(c).

Even more compelling, however, was the ALJ's second rationale for discounting Dr. Roman's assessment: it was inconsistent with her own treatment notes, as well as other evidence of mental impairment. For example, at his first visit on May 9, 2016, Plaintiff's chief "complaint" was "doing good"; his mood and sleep was reported as "good," he was polite, well-groomed, cooperative, exhibited normal psychomotor behavior, had clear speech, good mood and affect, linear through processing, good insight and judgment. AR 1147. Plaintiff further indicated he did not feel hopeless about the future, and had no suicidal ideation. AR 1148. The following month, Plaintiff reported to Dr. Roman that he was "doing good," had a good mood, and was sleeping well. AR 1141. Plaintiff further reported working on restoring vehicles, helping around the house, and mentioned that he had joined his family on a recent trip to Las Vegas. *Id.* His bipolar disorder was described as stable, and his mental status examination was good, as it was in May 2016. AR 1143-44. At a visit on September 12, 2016, Plaintiff requested a letter in support of his disability application. AR 1110. On examination, Plaintiff endorsed having a good mood, "neither depressed nor manic." *Id.* His mental status examination was unremarkable. AR 1111. On September 19, 2016, Plaintiff was described as disturbed because he had failed a drug test, although he claimed not to have used opioids. AR 1107. Plaintiff's mental status examination was once again good, and once again his bipolar disorder was described as stable. AR 1108. Dr. Roman's own treatment notes are inconsistent with her medical opinion—the ALJ did not err in making her finding. Further, as the ALJ noted, Dr. Roman's ultimate assessment was also inconsistent with other mental status examinations of record. AR 21, 23.

Plaintiff argues that the nature of his bipolar disorder involves periods of fluctuating symptoms and functionality, and that the ALJ erred by cherry-picking instances of waning symptoms, while ignoring a broader picture of frequently disabling symptoms, as was the case in *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014). Based on the summary of Dr. Roman's clinical notes above, however, it is evident that Plaintiff's assertion is meritless. Plaintiff has not identified any periods of waxing symptoms, significant mood fluctuations, or other indications of disability due to mental impairment. The ALJ's finding was specific, legitimate, and well-supported by substantial evidence.

## C.     Symptom Allegations

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider of all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements

are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Here, Plaintiff testified that he was previously able to perform his work with the assistance of narcotic pain medications, but can no longer work following a stint in rehab for alcohol and prescription painkiller dependence. AR 46-47, 49. Plaintiff also explained that his current back pain shoots down into his legs, and impairs his ability to sit, stand, and walk, such that he could only work for two to four hours per day. AR 52-53. Plaintiff further testified that his ability to work is limited by concentration issues, and that he had difficulty in his prior job because it took excessive time for him to read and complete paperwork. AR 43-44. Plaintiff also testified that his ability to work around others was substantially limited, and that he was only able to perform his prior work as a logger because it was generally solitary, outdoor work; however, when he had to work around others at a job delivering propane, proximity to others triggered panic attacks. AR 56-57. The ALJ determined that Plaintiff's symptom allegations were not entirely consistent with the medical evidence and other evidence of record, and therefore the allegations were found to impact his ability to work only to the extent that they could reasonably be accepted as consistent with the objective medical and other evidence. AR 19-20.

Plaintiff contends that the ALJ erred by finding Plaintiff's back pain allegations were not supported by the objective evidence. In support, Plaintiff asserts that contrary to the ALJ's finding, treating physician Dr. Ewald indicated that Plaintiff had a positive straight-leg raise test on the right side, diminished deep-tendon reflexes, negative Waddell's signs, and no lumbar ROM below the L3 level of his spine. As discussed above, however, Dr. Ewald's statements were not supported by his own treatment notes or other treatment notes of record; to the contrary, there are no chart notes of record which demonstrate a positive straight-leg test, diminished deep-tendon reflexes, or absence of lumbar ROM. Indeed, prior to Dr. Ewald's medical opinion statement, he had examined plaintiff and found no musculoskeletal abnormalities, pain, or functional limitation. AR 20-21, 269-70. Similarly, consistent with the discussion above herein, the ALJ found Dr. Roman's medical opinion regarding Plaintiff's mental allegations unsupported by her own chart notes and other evidence of record, because Plaintiff regularly reported good mood and effective treatment of his mental impairments. AR 21. Because the ALJ's finding was clear, convincing, and supported by substantial evidence, the ALJ did not err in finding Plaintiff's symptom allegations not fully credible based on inconsistencies with the medical evidence of record. *Batson*, 359 F.3d at 1196.

Plaintiff also argues that the ALJ erred in finding his activities of daily living inconsistent with his allegations of disability. The ALJ explained specifically that Plaintiff's ability to rebuild vehicles was inconsistent with his allegations that he could not crouch, crawl, or squat. AR 21-22. The ALJ further explained that despite Plaintiff's allegations of limited ability to perform household chores, walk, or tolerate the company of others, he was able to help out around the house, and he accompanied his family on a trip to Las Vegas. AR 22, 1141. Although Plaintiff argues his trip to Las Vegas did not demonstrate an ability to be around crowds or walk

extensively, the assertion is undermined by Plaintiff's own report that he became sore from the amount of walking he did there. *Id.* The ALJ's rationales were clear, convincing, and supported by substantial evidence. Moreover, even if the evidence were susceptible to more than one rational interpretation, the Court is compelled to affirm the ALJ's, insofar as it is rational and supported by the record. *Molina*, 673 F.3d at 1110. As such, the ALJ did not err.

## CONCLUSION

Because the Commissioner's decision was based on the proper legal standards and supported by substantial evidence, the decision is AFFIRMED.

**IT IS SO ORDERED.**

DATED this 24th day of May, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge